AO 91 (Rev. 5/85) Criminal Complaint          AUSA Corey Steinberg

# United States District Court

## SOUTHERN DISTRICT OF FLORIDA

**UNITED STATES OF AMERICA**

v.

**Oscar L. KNOWLES, Claudio GONZALEZ,
James L. SILLS, Bernard L. COLLIE,
Steve ROUSSEAU, Charles A. DENNARD,
Darrell L. REAVES, Robert L. ADAMS,
Antoine D. KNIGHT, and Marlon V. SILLS,**

(Name and Address of Defendant)

**CRIMINAL COMPLAINT**

CASE NUMBER: 04-31-FJL

    I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief.  Beginning at least as early as <u>November 2003</u>, and continuing to at least as recent as <u>May 2004</u>, in <u>St. Lucie, Palm Beach, and Broward</u> Counties, in the <u>Southern</u> District of <u>Florida and elsewhere</u>, the defendants,

        did knowingly and intentionally combine, conspire, and confederate to possess with intent to distribute a Schedule II narcotic controlled substance, that is, a mixture and substance containing a detectable amount of cocaine hydrochloride

in violation of Title   <u>21</u>   United States Code, Section   <u>846</u> .

I further state that I am a <u>Special Agent, Florida Department of Law Enforcement</u> and that this complaint is based on the following facts:

### PLEASE SEE ATTACHED AFFIDAVIT.

Continued on the attached and made a part hereof:     <u>X</u>     YES      NO

Signature of Complainant
RICHARD PICCININNI
Special Agent
Florida Department of Law Enforcement

Sworn to before me, and subscribed in my presence,

<u>May /3, 2004</u>
Date

at     <u>Fort Pierce, Florida</u>
     City and State

FRANK J. LYNCH, Jr.
<u>UNITED STATES MAGISTRATE JUDGE</u>
Name and Title of Judicial Officer

Signature of Judicial Officer

**AFFIDAVIT**
**OF**
**RICHARD J. PICCININNI**
**SPECIAL AGENT**
**FLORIDA DEPARTMENT OF LAW ENFORCEMENT**

I, Richard J. Piccininni, being duly sworn, state and depose that:

1.    I am employed as a Special Agent with the Florida Department of Law Enforcement in Saint Lucie County, Florida, and have been so employed for over seven years.  Prior to becoming a Special Agent, I was employed as a Detective with the Special Investigations Unit of the Saint Lucie County Sheriff's Office for six years and a Special Agent with the Drug Enforcement Administration for two years.  During my career, I have conducted investigations and been instructed in techniques dealing with the unlawful distribution of narcotics, possession with intent to distribute controlled substances, use of communication facilities to conduct narcotics transactions, and maintaining a place for purposes of manufacturing, distributing or using controlled substances, in violation of Title 21, United States Code, Sections 841(a), 843(b), 846, and 856.  Through investigations and training, I have become familiar with narcotics traffickers' methods of operation including the distribution, storage and transportation of narcotics, the collection of money which represents the proceeds of narcotics trafficking and money laundering.  I am aware that drug traffickers often communicate with their drug trafficking associates through the use of cellular telephones and that drug

traffickers often change cellular telephones in an effort to thwart law enforcement's use of electronic surveillance. I am also aware that drug traffickers often speak in guarded or coded language when discussing their illegal business in an effort to further prevent detection. This affidavit is submitted in support of a criminal complaint charging OSCAR KNOWLES, CLAUDIO GONZALEZ, JAMES SILLS, BERNARD COLLIE, STEVE ROUSSEAU, CHARLES DENNARD, ROBERT ADAMS, ANTOINE KNIGHT, DARRELL REAVES, and MARLON SILLS with violations of Title 21, United States Code, Sections 841(a)(1) and 846.

## BACKGROUND

2. During November 2003, a multi-agency, multi-jurisdictional investigation into a major south Florida cocaine trafficking organization was initiated. The investigation has consisted of seven wire intercepts on the cellular telephones of organizational members from Saint Lucie, Palm Beach and Broward Counties. The information gathered during the course of the investigation has revealed that the organization is run by an individual identified as OSCAR KNOWLES. KNOWLES is originally from the Bahamas, and currently resides in Coral Springs, Florida. He distributes a majority of the narcotics from residences located in Fort Lauderdale, Florida. It is estimated that the organization is responsible for the distribution of between 50 and 80 kilograms of cocaine per month. The organization also distributes quantities of marijuana, ecstasy tablets, and assorted prescription pills.

2

3.    Residences of organizational members have been identified as "stash houses" and are located in Broward, Saint Lucie, and Palm Beach Counties.  Many  organizational members are also involved in a dog fighting ring where people gamble on the outcome of the fights.   The individuals involved in this activity often own multiple numbers of these ferocious animals.  The animals are also being utilized for the protection of individuals, their money and narcotics at various locations used and frequented by the members of the conspiracy.

4.    During the course of the investigation, approximately 8½ kilograms of cocaine have been seized by law enforcement, following traffic stops of organizational members who were transporting the drugs from Broward County to Saint Lucie County.  In one instance, the cocaine was found in a hidden compartment which was built into the vehicle.

5.    Additionally,  it  has  become  known  that  the  current investigation  is  related  to  other  major  ongoing  narcotics investigations.  For example,  Operation End of the Line, based out of Saint Augustine, Florida, recovered large quantities of cocaine and U.S. currency.  Monitored conversations during the current wire intercept have established that cocaine seized during the Saint Augustine investigation was supplied by the Knowles Organization. OSCAR KNOWLES is actively involved in the criminal case of Linden Adams,  who  was  arrested  and  charged  with  possession  of  over  4

3

kilograms of cocaine in the Saint Augustine case. (Linden Adams is the brother of ROBERT ADAMS, one of the subjects of this investigation.) In addition, a Broward DEA Task Force Operation and a Tampa DEA Task Force Operation made arrests and seizures of cocaine which were directly linked to the Knowles Organization. This information was obtained from Broward Task Force Officers and a cooperating defendant respectively who advised that the subjects of these investigations were receiving cocaine directly from the Knowles organization.

6. In November 2003, FDLE, along with the St. Lucie County Sheriff's Office (SLCSO), State Attorney's Office (SAO), Immigration and Customs Enforcement (ICE), and the Drug Enforcement Administration (DEA), initiated a state court ordered wire intercept on the cellular telephones of OSCAR KNOWLES, ROBERT ADAMS, and Antoine Thomas. That wire intercept was discontinued at the beginning of December 2003 due to technical problems. On March 25, 2004, the aforementioned agencies again initiated a state court ordered wire intercept on the cellular telephones of OSCAR KNOWLES, ROBERT ADAMS, and CHARLES DENNARD. The wire intercept is one of the tools being used to investigate the Knowles' trafficking organization. As stated in paragraph 2 above, the investigation has revealed that the organization is controlled and operated by OSCAR KNOWLES. KNOWLES has individuals (who have been identified as CLAUDIO GONZALEZ, JAMES SILLS, BERNARD COLLIE, STEVE ROUSSEAU,

4

CHARLES DENNARD, ROBERT ADAMS, ANTOINE KNIGHT, DARRELL REAVES and MARLON SILLS, along with others yet unidentified) who maintain and assist with the organization's daily operation.  KNOWLES and these individuals are responsible for processing, packaging, and distributing cocaine along with the collection of money from the sale of the cocaine. KNOWLES directs, controls and oversees all aspects of the organizational members' responsibilities.

7.    During the wire intercept, it has been determined that KNOWLES and other members of the organization use code words when speaking about quantities of cocaine, monies owed and locations. It has been my experience that these code words in many instances are used out of context in an attempt to conceal the activities of the organization.  This organization uses terminology to describe cocaine which include "dog," "bag of dog food," "puppy," "girl," and "o'clock".  Specific examples of code words used by the organization are, "one o'clock," meaning one kilogram of cocaine hydrochloride, and "one puppy and a half" meaning 1½ kilograms of cocaine hydrochloride.  Some of the codes used to describe money are "receipts" and "paperwork".

8.    Information gathered during the course of the wire intercept has revealed the following pattern of operation by organizational members and the method of management by KNOWLES. KNOWLES accomplishes his managerial activities through the use of cellular telephones and personal meetings with organizational

5

members.  KNOWLES appears to have different sources of supply, one of whom has been identified as a Cuban male named CLAUDIO GONZALEZ. It appears that GONZALEZ has been supplying the majority of the cocaine to the KNOWLES organization.  Intercepted telephone conversations have revealed that GONZALEZ has unidentified individuals working for him who facilitate the deliveries of cocaine to KNOWLES as supply is needed. On most occasions, KNOWLES will have telephone conversations with GONZALEZ in reference to delivery dates and prices of the cocaine.  KNOWLES will then contact either BERNARD COLLIE or JAMES SILLS to assist with the pick-up and transfer of the cocaine to the "stash" houses that are under KNOWLES' control.  Telephone conversations have revealed that STEVE ROUSSEAU, CHARLES DENNARD, ROBERT ADAMS, ANTOINE KNIGHT, DARRELL REAVES and MARLON SILLS then receive kilogram quantities of cocaine from KNOWLES and assist with the distribution of the narcotics throughout south Florida.

## CHRONOLOGICAL TELEPHONE CONVERSATIONS

9.   On March 25, 2004, an intercepted telephone conversation between KNOWLES and DENNARD revealed that DENNARD would be picking up 1 kilogram of cocaine from KNOWLES and that he would be bringing the receipts.  KNOWLES advised that he would put the "dog" in the garage, and told DENNARD to call him when he got close.

10.  On March 28, 2004, an intercepted telephone conversation between KNOWLES and COLLIE revealed that COLLIE had already sold 4½

kilograms of cocaine on behalf of KNOWLES and that he needed KNOWLES to supply him with an additional kilogram of cocaine.

11. On March 29, 2004, an intercepted telephone conversation between KNOWLES and MARLON SILLS revealed that MARLON SILLS asked KNOWLES for a "hoe" (one kilogram of cocaine). KNOWLES agreed to provide him with the cocaine. KNOWLES then advised MARLON SILLS that he had some "doo doo ones" (repackaged kilograms of cocaine), and told MARLON SILLS that he would provide him with one of those.

12. On March 30, 2004, an intercepted telephone conversation between KNOWLES and GONZALEZ revealed that GONZALEZ would be delivering cocaine to KNOWLES. GONZALEZ asked KNOWLES if he wanted a "five o'clock" (5 kilograms of cocaine), to which KNOWLES advised, "just three". KNOWLES then told GONZALEZ to meet him at "Chucky's" (Chucky has been identified as BERNARD COLLIE).

13. On April 02, 2004, a series of intercepted telephone conversations among KNOWLES, ROUSSEAU and DENNARD revealed that at approximately 8:50 am, ROUSSEAU ordered "three girls" (3 kilograms of cocaine) from KNOWLES. At 6:43 pm, KNOWLES called ROUSSEAU to confirm the deal and asked if ROUSSEAU wanted DENNARD to take care of it for him. At 6:45 pm, DENNARD called KNOWLES and told him that he had "that thing" for him, and asked KNOWLES "which house, 1125 or Coral Springs?" KNOWLES replied, "no, 2nd" ( 9168 NW 2nd Street, Coral Springs). During subsequent conversations among KNOWLES, ROUSSEAU and DENNARD, the details of the transaction were

finalized. At one point during a conversation between DENNARD and KNOWLES, KNOWLES advised that he had a "three o'clock" for ROUSSEAU and a "one o'clock for DENNARD. According to a review of later conversations, DENNARD met KNOWLES at 9168 N.W. 2nd Street, Coral Springs. Thereafter, at 9:34 pm, DENNARD called ROUSSEAU and advised him that he was at his front door (4125 Bougainvilla Street, West Palm Beach). Later in the evening, ROUSSEAU called KNOWLES and told him that everything was straight and that he would give him "four dollars" ($40,000) the following day.

14. On April 03, 2004, a intercepted telephone call between KNOWLES and JAMES SILLS revealed that JAMES SILLS was going to receive a "two or three o'clock" (2 or 3 kilograms of cocaine).

15. On April 04, 2004, a series of intercepted telephone conversations among KNOWLES, REAVES and ADAMS were intercepted. The conversations revealed that REAVES would be picking up 5½ kilograms of cocaine from KNOWLES, 2 kilograms of which were ordered by ADAMS. REAVES first advised KNOWLES that he needed a "three o'clock" (3 kilograms of cocaine). During the call, KNOWLES told REAVES to check with "the other boy" before he left. A second call was intercepted during which REAVES called ADAMS and asked if he needed anything. ADAMS replied that he wanted a two o'clock (2 kilograms), and thereafter, REAVES contacted KNOWLES and advised him that ADAMS wanted a "two o'clock". KNOWLES asked REAVES if that would be a total of a "five o'clock". REAVES replied that his

8

cousin also needed a "half o'clock". During the next conversation, REAVES advised KNOWLES that he was waiting for him at the SWAP Shop (Sunrise / Ft Lauderdale) and KNOWLES told REAVES to meet him at Chucky's (COLLIE's) house.

16. On April 05, 2004, an intercepted telephone call between KNOWLES and JAMES SILLS revealed that JAMES SILLS would be getting a "six o'clock" (6 kilograms of cocaine).

17. On April 06, 2004, ROUSSEAU called KNOWLES and ordered "two girls" (2 kilograms of cocaine). KNOWLES agreed to this and ROUSSEAU advised that he would call back when he got close.

18. On April 12, 2004, an intercepted telephone conversation between KNOWLES and MARLON SILLS revealed that MARLON SILLS had provided KNOWLES with $43,000 in U.S. currency as payment for a previous purchase of cocaine. (A number of intercepted telephone conversations among organizational members have indicated that the price of one kilogram of cocaine is $21,500.)

19. On April 12, 2004, KNOWLES received a telephone call from REAVES requesting a "two o'clock" (2 kilograms of cocaine). REAVES advised that he would be leaving Fort Pierce in approximately fifteen minutes and that he would meet KNOWLES at the dog pound (1125 N.W. 15th Street, Fort Lauderdale, FL). Surveillance was immediately established at 1125 N.W. 15th Street. Approximately 1½ hours later, a black male driving a blue Honda Accord was observed backing into the 1125 N.W. 15th Street

9

residence.  KNOWLES was observed standing outside the residence.
After a short time, the vehicle left the residence at 1125 N.W. 15th
Street, followed by surveillance units.  The vehicle traveled onto
Interstate 95, and was eventually stopped in St. Lucie County.  The
male driving the vehicle was identified as REAVES.  Inside a hidden
compartment built into the vehicle, 2 1/4 kilograms of cocaine
hydrochloride were recovered, surrounded by several sheets of
fabric softener.   The fabric softener sheets were apparently
utilized in an attempt to deter law enforcement drug detection dogs
from detecting any illegal narcotics.  The attempt did not work and
the dog alerted to the narcotics.  REAVES was released in an effort
to further the investigation.

     20.  On April 16, 2004, a series of intercepted telephone
conversations between KNOWLES and COLLIE revealed that COLLIE would
be picking up 5 kilograms of cocaine from KNOWLES.  During the
first conversation, COLLIE advised KNOWLES that he needed "one
girl" (one kilogram of cocaine).  COLLIE then changed his order and
advised KNOWLES that he needed 2 kilograms instead of just one,
using the code terminology of a "two o'clock instead of a one
o'clock".  During a subsequent call, KNOWLES advised COLLIE to grab
a "five o'clock" (5 kilograms of cocaine), three of which were to
be delivered to an individual named Charlie.

     21.  On April 16, 2004, at approximately 7:09 pm, ROUSSEAU
called KNOWLES and ordered "two girls" (2 kilograms of cocaine).

ROUSSEAU also advised that he would "give him fifteen dollars on the receipts" ($15,000). Thereafter, at 10:22 pm, KNOWLES called ROUSSEAU for an update to which ROUSSEAU replied that "the man" was about to leave and that he was just getting the receipts together.

22. Between April 22 and April 24, 2004, a series of telephone conversations among KNOWLES, ADAMS and KNIGHT were intercepted. An April 22, 2004 conversation revealed that KNIGHT would be returning a kilogram of poor quality cocaine and in exchange, would be receiving a kilogram of higher quality cocaine. An April 24, 2004 conversation between KNOWLES and ADAMS indicated that KNIGHT would be traveling to Fort Lauderdale that day. KNOWLES advised ADAMS to contact KNIGHT to see if he would be willing to transport additional kilograms of cocaine to ADAMS. A further conversation between KNOWLES and ADAMS revealed that ADAMS wanted a "three o'clock" (3 kilograms of cocaine). Intercepted information indicated that KNIGHT would be picking up the cocaine at KNOWLES' primary residence (9168 N.W. 2nd Street, Coral Springs, FL). Surveillance units were dispatched to the 9168 N.W. 2nd Street, Coral Springs residence, who later spotted a black Mercury (driven by KNIGHT) arrive at the residence. Additionally, the surveillance team observed KNIGHT carrying a black bag into the residence. Surveillance units later observed KNIGHT leaving the residence with a box, which he placed in the trunk of the vehicle. Surveillance units followed KNIGHT's vehicle to Martin County,

11

where deputies stopped and searched the vehicle, and located approximately 4½ kilograms of cocaine powder in a cardboard box in the trunk.  KNIGHT was arrested and is currently being held at the Martin County Jail.

23.  On May 08, 2004, a series of intercepted telephone conversations among KNOWLES, GONZALEZ and JAMES SILLS indicated that GONZALEZ would be delivering 10 kilograms of cocaine to KNOWLES.  The conversations revealed that GONZALEZ would deliver the cocaine to JAMES SILLS who would take control of the cocaine on behalf of KNOWLES.

24.  Based on the above information, I believe that from at least as early as November 2003, to at least as recent as May 2004, OSCAR KNOWLES, CLAUDIO GONZALEZ, JAMES SILLS, BERNARD COLLIE, STEVE ROUSSEAU, CHARLES DENNARD, ROBERT ADAMS, ANTOINE KNIGHT, DARRELL REAVES and MARLON SILLS conspired to possess with intent to distribute cocaine in violation of Title 21, United States Code, Sections 841(a)(1) and 846.

Your affiant further sayeth naught.

Richard J. Piccininni
Special Agent

Sworn and subscribed to before me this _13_ day of May 2004.

Frank J. Lynch, Jr.
United States Magistrate Judge

12